IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JOHNATHON S. HICKS and
BRYCE'S BAIL BONDS, INC.                                                PLAINTIFFS

v.                          Case No. 1:22-cv-01037

DAVID NORWOOD, personally and in his official
capacity as SHERIFF OF OUACHITA
COUNTY, ARKANSAS                                           DEFENDANT

**ORDER**

Before the Court is Defendant David Norwood's motion for summary judgment. ECF No. 20. Plaintiffs Johnathon S. Hicks and Bryce's Bail Bonds, Inc. (Bryce's) did not timely respond, and on May 31, 2023, the Court issued a show-cause order. ECF No. 25. Plaintiffs did not respond to the show-cause order but filed the instant motion to nonsuit. ECF No. 26. Defendant has responded. ECF No. 27. Both matters are ripe for the Court's consideration.

**I. BACKGROUND**

Plaintiffs filed this action on June 28, 2022, and in their complaint, Plaintiffs state that Plaintiff Hicks "is a bail bondsman licensed by the Arkansas Professional Bail Bond Licensing Board," Plaintiff Bryce's "is a bail bond company," and Defendant Norwood "is currently the duly elected Sheriff of Ouachita County." ECF No. 2, at 3. Pursuant to Defendant's recitation of the facts,[1] Plaintiff Hicks wrote a bail bond for Jane Doe. He then picked up Jane Doe in Ouachita

---

[1] As explained below, because Plaintiffs have not responded to Defendant's motion for summary judgment, the Court accepts Defendant's version of the facts as true. *See, e.g.*, *Baryo v. Phillip Morris, Inc.*, No. 05-1192-CV-W-NKL, 2008 WL 510396, at *1 (W.D. Mo. Feb. 25, 2008) (adopting defendant's version of the facts where plaintiff did not respond to motion for summary judgment); *see also* W.D. Ark. Local Rule 56.1(c) ("All material facts set forth . . . by the moving party . . . shall be deemed admitted unless controverted by . . . the non-moving party . . . .").

County around 1:00 a.m. on June 11, 2022, and drove her to a casino in Pine Bluff, Arkansas. At some point, Plaintiff Hicks attempted to kiss Jane Doe, but she refused. Plaintiff Hicks tried a second time, and Jane Doe declined again. Jane Doe texted a friend while she was with Plaintiff Hicks and said "911."

Plaintiff Hicks and Jane Doe left the casino around 4:00 a.m., and when Plaintiff Hicks arrived at the Ouachita County Sheriff's Department around 8:00 a.m. to drop off Jane Doe, Jane Doe was asleep in the front seat of Plaintiff Hicks's vehicle. Sheriff's deputies struggled to wake Jane Doe. At this point, Jane Doe was wearing different clothing than she had been when Plaintiff Hicks picked her up. Upon her arrival to the Ouachita County Sheriff's Department, Jane Doe reported that her last memory was standing in the casino, but she could not recall anything after that. Jane Doe further reported that she believed "something" could have happened between her and Plaintiff Hicks but that she did not consent to sex with Plaintiff Hicks.

The Ouachita County Sheriff's Department opened a criminal investigation to determine if Plaintiff Hicks had committed a crime or otherwise engaged in wrongdoing. As part of this investigation, a rape kit was conducted on Jane Doe.[2] Two days later, Defendant advised Plaintiff Hicks that he was no longer allowed to write bonds for inmates at the Ouachita County Jail. This suspension was temporary, pending the outcome of the criminal investigation. This cause of action ensued.[3]

In their complaint, Plaintiffs bring a "Civil Rights Violation" claim (Claim I), a defamation claim (Claim II), and an outrage claim (Claim III). In Claim I, Plaintiffs allege that Defendant

---

[2] The record does not indicate the findings of the Ouachita County Sheriff's Department's criminal investigation, nor does it include the results of the rape kit.

[3] Plaintiff Hicks filed a motion for injunctive and declaratory relief in Union County Circuit Court prior to filing this action. On June 22, 2022, the Union County Circuit Court held a hearing on the matter and enjoined Defendant from prohibiting Plaintiff Hicks from writing bonds at the Ouachita County jail.

"ordered, directed, and/or caused the plaintiffs to be unable to use their state license to write and issue bail bonds" without due process, resulting in damages including, but not limited to, loss of past and future income, reputational harm, emotional distress, and pain and suffering. ECF No. 2, at 9.  Claim II is a state-law defamation claim which pertains to statements made by Defendant to a news station in Camden, Arkansas (Camden News).  In Plaintiffs' view, these statements "tended, or were reasonably calculated, to cause harm to Hicks's reputation as a bail bond agent" and "tended, or [were] reasonably calculated, to cause harm to Bryce's reputation as a bail bond company." ECF No. 2, at 10-11.  Finally, in Claim III, Plaintiffs bring a state-law outrage claim and allege that it was "outrageous" that Defendant "accused Hicks of rape and made public statements that Hicks was a sexual deviant who forced female inmates to perform sexual favors for their freedom."  ECF No. 2, at 13.  Plaintiffs further allege that Defendant's conduct was "outrageous" when he "accused Bryce's of employing a rapist and made public statements that Bryce's employed a sexual deviant who forced female inmates to perform sexual favors for their freedom."  ECF No. 2, at 13.

On April 6, 2023, Plaintiff Hicks filed a motion seeking nonsuit.  ECF No. 18.  He stated that although he no longer wished to proceed with his claims against Defendant, Plaintiff Bryce's claims remained.  On May 15, 2023, the Court denied Plaintiff Hicks's motion.  ECF No. 24.  The Court explained that all three claims necessarily involved Plaintiff Hicks, and if the Court dismissed Plaintiff Hicks from the action, it would be "confusing for Defendant to defend against a lawsuit singularly brought by Plaintiff Bryce's Bail Bonds, Inc." and "would leave open the possibility that Defendant will be subjected to 'double, multiple, or otherwise inconsistent obligations because of [Plaintiff] Hicks'[s] unresolved interest.'" ECF No. 24, at 5 (alterations in original) (citation omitted).  The Court additionally noted that Plaintiff Hicks did not provide a

sufficient explanation as to *why* he wished to dismiss his claims, stating only that he "no longer desire[d] to prosecute this action or seek damages." ECF No. 24, at 5.

On May 9, 2023, while Plaintiff Hicks's motion for nonsuit was still pending, Defendant filed a motion for summary judgment and a brief in support. ECF Nos. 20, 21. Plaintiffs' response to Defendant's motion for summary judgment was due on or before May 23, 2023. As of May 31, 2023, Plaintiffs had not responded, and the Court therefore issued a show-cause order requiring Plaintiffs to either: (1) show cause as to why they had not responded to Defendant's summary judgment motion, or (2) file a response to the summary judgment motion within seven days of the show-cause order. ECF No. 25. Plaintiffs did neither.

On June 7, 2023, Plaintiffs filed the instant motion to nonsuit. ECF No. 26. Plaintiffs state that they "no longer desire to prosecute this action or seek damages" and ask the Court to dismiss their claims without prejudice. ECF No. 26. Defendant opposes the motion. *See* ECF No. 27. In Defendant's view, Plaintiffs' motion should be dismissed because it is not responsive to the Court's show-cause order or Defendant's motion for summary judgment. Defendant further explains that if the Court grants Plaintiffs' motion to nonsuit, Defendant would consequently incur "duplicative costs and fees, as well as duplication of time and resources being expended in defending the claims." ECF No. 27, at 2.[4] For the following reasons, the Court finds that Plaintiffs' motion for nonsuit should be denied and Defendant's motion for summary judgment should be granted.

## II. DISCUSSION

Two questions are currently before the Court. First, the Court must decide whether dismissal without prejudice of Plaintiffs' claims (aka, a nonsuit) is appropriate. If not, the Court

---

[4] Defendant alternatively argues that if the Court grants Plaintiffs' motion to nonsuit, the Court should include certain terms and conditions that would govern in the event that Plaintiffs refile their claims in a future second lawsuit.

must then decide whether summary judgment in favor of Defendant is appropriate. The Court addresses each question in turn.

### A. Nonsuit

Plaintiffs do not provide any legal support for their motion, so the Court is left to assume that Plaintiffs' motion to nonsuit is brought pursuant to Federal Rule of Civil Procedure 41. As the Court explained in its May 15 Order, "[p]ursuant to Rule 41(a)(2), actions may be dismissed upon [a] plaintiff['s] request, only by court order, and only upon terms the court considers proper." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-cv-01252, 2014 WL 4386742, at *4 (E.D. Mo. Sept. 5, 2014); *see also* Fed. R. Civ. P. 41(a)(2). It is within the district court's sound discretion to decide whether a voluntary dismissal should be granted. *Beavers v. Bretherick*, 227 F. App'x 518, 520 (8th Cir. 2007); *cf. Great Rivers Co-op of Se. Iowa v. Farmland Indus., Inc.*, 198 F.3d 685, 689 (8th Cir. 1999) ("It is axiomatic that a dismissal pursuant to Rule 41(a)(2) is not one of right but is rather a matter for the discretion of the trial court." (citation omitted)). When deciding whether Rule 41(a)(2) dismissal is warranted, the following factors are instructive: "the defendant's effort and the expense involved in preparing for trial," "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," "insufficient explanation of the need to take a dismissal," "the fact that a motion for summary judgment has been filed by the defendant," "emotional and psychological trauma associated with the experience of defending another lawsuit," and "the prejudice resulting from uncertainty over title to land." *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987).

Here, the Court finds that Plaintiffs' motion for nonsuit should be denied. First, in its May 15 order denying Plaintiff Hicks's motion for nonsuit, the Court explained that Plaintiff Hicks's explanation as to why he sought nonsuit was insufficient. *See* ECF No. 24, at 5. Plaintiff Hicks simply stated that he "no longer desire[d] to prosecute this action or seek damages." ECF No. 24,

at 5. Nevertheless, in the instant Motion to Nonsuit, Plaintiffs state only that they "no longer desire to prosecute this action or seek damages." ECF No. 26, at 1. This is the exact language that the Court found to be insufficient on May 15, and the Court finds it to be insufficient again now. *See, e.g.*, *Paulucci*, 826 F.2d at 783 (considering, among other facts, the moving party's "insufficient explanation of the need to take a dismissal").

Further, the case has developed since Plaintiff Hicks's first motion to nonsuit, and at this juncture, additional factors weigh against nonsuit. Defendant has since filed a motion for summary judgment, and Plaintiffs have not responded to Defendant's motion for summary judgment or to the Court's show-cause order. As noted above, "the fact that a motion for summary judgment has been filed by the defendant" and any "excessive delay or lack of diligence" on behalf of Plaintiffs in prosecuting this action weighs in favor of denying Plaintiffs' motion to nonsuit. *See id.*

Moreover, in Defendant's response in opposition to Plaintiffs' nonsuit motion, Defendant asserts that "Plaintiffs should not be allowed to non-suit to circumvent the Court's instructions as to the pending summary judgment motion." ECF No. 27. The Court agrees. The Court's instructions were clear: Plaintiffs should show cause as to why they have not responded to Defendant's motion for summary judgment, or Plaintiffs should file a response to Defendant's motion for summary judgment. Plaintiffs did neither and should not now be allowed to seek a dismissal without prejudice, leaving open the possibility of refiling the same claims in the future. Accordingly, the Court finds that Plaintiffs' motion to nonsuit (ECF No. 26) should be denied.

### B. Summary Judgment

Turning to Defendant's motion for summary judgment, the Court finds that it should be granted. As observed above, Plaintiffs have not responded to the Court's show-cause order, nor have they responded to Defendant's motion for summary judgment. Plaintiffs have also not requested an extension of time to file any response. Accordingly, the Court adopts Defendant's

6

version of the facts and relies on that version when deciding whether summary judgment is appropriate. *See, e.g.*, *Baryo*, 2008 WL 510396, at *1; *see also* W.D. Ark. Local Rule 56.1(c) ("All material facts set forth . . . by the moving party . . . shall be deemed admitted unless controverted by . . . the non-moving party . . . .").

Even though Defendant's motion for summary judgment is unopposed, the Court "must still determine that the moving party is entitled to judgment as a matter of law on [each] claim." *Calon v. Bank of Am., N.A.*, 915 F.3d 528, 530 (8th Cir. 2019) (citation omitted); *see also Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.").

The familiar summary judgment standard dictates that the Court should grant a motion for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047-48 (8th Cir. 2022) (citation omitted). This means if "there is 'no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party,'" the Court may grant summary judgment in the movant's favor. *Sieden v. Chipotle Mexican Grill, Inc.*, 946 F.3d 1013, 1016 (8th Cir. 2017) (citation omitted). "A fact is 'material' if it may 'affect the outcome of the suit.'" *Erickson*, 31 F.4th at 1048 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The

7

nonmoving party must respond by submitting evidentiary materials that set out 'specific facts showing . . . a genuine issue for trial.'" *Scaife v. Am. First Ins. Stephens Ins. Agency*, No. 4:12-cv-00617, 2012 WL 12884390, at *1 (E.D. Ark. Dec. 13, 2012) (citation omitted).  Where "the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case," the nonmoving party does not satisfy this burden, and summary judgment is appropriate. *Obama v. Price*, No. 5:10-cv-00202, 2011 WL 1077899, at *1 (E.D. Ark. Feb. 1, 2011).

With this standard in mind, the Court turns to Defendant's motion.  Defendant first argues that he is entitled to summary judgment on Plaintiffs' due process claim, as "Plaintiffs have failed to establish a constitutionally[ ]protected property interest in their respective bail bond licenses." ECF No. 21, at 11.  The Court agrees.

To successfully allege a prima facie due process claim, a plaintiff must show "(1) the existence of a liberty or property interest entitled to due process protection, and (2) deprivation of that interest without sufficient notice and opportunity to present objections." *Wright v. Family Support Div. of Mo. Dep't of Soc. Servs.*, 458 F. Supp. 3d 1098, 1111 (E.D. Mo. May 1, 2020). "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it.'" *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quoting *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  "Abstract injuries, by themselves, do not implicate the due process clause." *Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008).  "[A] plaintiff must demonstrate that he has been deprived of some benefit to which he has a 'legitimate claim of entitlement,'" *Id.* (citation omitted), and "[i]f the plaintiff cannot identify any protected liberty or property interest of which he was deprived, 'any procedural due process claim necessarily fails,'" *Quinn v. Doherty*, No. 22-cv-369, 2022 WL 16554574, at *6 (D. Minn. Oct. 31, 2022) (quoting *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012)).  Protected

8

interests do not originate from the due process clause, but rather, from state law. *See Austell*, 690 F.3d at 935.

Here, Plaintiffs allege only that "[w]hen a state has established a licensing system to regulate professionals, a license may not be revoked without affording the accused procedural due process." ECF No. 2, at 7. Plaintiffs' complaint is the only document that the Court has to evaluate the strength of Plaintiffs' due process claim, as Plaintiffs have not otherwise substantively argued in support of that claim. In their complaint, Plaintiffs cite to three cases that, in their view, establish a protected property interest in bail bonding licenses: *Kloch v. Kohl*, 545 F.3d 603 (8th Cir. 2008), *Marler v. Missouri State Board of Optometry*, 102 F.3d 1453 (8th Cir. 1996), and *Hopkins v. Saunders*, 199 F.3d 968 (8th Cir. 1999). ECF No. 2, at 7. However, these cases are not helpful here, as all three rely on other states' law in deciding (or assuming without deciding) that a plaintiff has a protected property interest in a professional license.

In *Kloch*, the Eighth Circuit considered a Nebraska statutory scheme and stated briefly that a state's licensure system *may* create a property interest. 545 F.3d at 607 ("We have recognized that such an entitlement may exist where a state has established a licensing system for regulation of professionals."). For that proposition, the Eighth Circuit cited *Marler*, in which the Eighth Circuit considered Missouri law and found that Missouri law created a protected property interest in an optometrist's professional license. 102 F.3d at 1456. *Kloch* and *Marler* do not promulgate a bright-line rule that professionals *always* have a property interest in their professional licenses. Instead, in *Kloch* and *Marler*, state law—not Arkansas state law—gave rise to the discussed property interest. *Hopkins* is similarly unhelpful here. In *Hopkins*, the Eighth Circuit affirmed the district court's finding that the plaintiff had a property interest in his job, but the Eighth Circuit reached this conclusion by looking to the at-issue Missouri-specific scheme. *See* 199 F.3d at 972 (considering "a merit system plan" adopted by the Missouri Department of Agriculture).

9

Ultimately, Plaintiffs have not directed the Court to any statutes or case law establishing that, under Arkansas law, a bail bondsman has a protected property interest in his professional license. Without any protected property interest, Plaintiffs' due process claim necessarily fails. *Quinn*, 2022 WL 16554574, at *6. Therefore, the Court finds that summary judgment in favor of Defendant on Plaintiffs' due process claim is appropriate. *See, e.g.*, *Austell*, 690 F.3d at 935 (finding summary judgment appropriate where plaintiff did not cite to state authority establishing constitutionally protected property interest); *Obama*, 2011 WL 1077899, at *1.[5]

Defendant also seeks summary judgment on Plaintiffs' state-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" where that "district court has dismissed all claims over which it has original jurisdiction." Stated simply, "[o]nce [a plaintiff's] federal claims [are] gone, the district court ha[s] no obligation to exercise supplemental jurisdiction over [remaining state-law claims]." *Walker-Swinton v. Philander Smith Coll.*, 62 F.4th 435, 441 (8th Cir. 2023). Typically, "'judicial economy, convenience, fairness, and comity' . . . 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (citation omitted). Here, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g.*, *McGill v. Reynolds Metals Co.*, 169 F. Supp. 2d 966, 972 (W.D. Ark. Apr. 18, 2001) ("Having granted the summary judgment motion on the federal law claims, we will decline to retain jurisdiction on the state law claim.")

---

[5]The Court declines to affirmatively decide whether Arkansas law creates a constitutionally protected property interest in a bail bondsman's professional license. Rather, the Court's conclusion is simply based on the fact that Plaintiffs have not sufficiently alleged a prima facie due process claim.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' motion to nonsuit (ECF No. 26) should be and hereby is **DENIED**.  The Court further finds that Defendant's motion for summary judgment (ECF No. 20) should be and hereby is **GRANTED**.

**IT IS SO ORDERED**, this 21st day of June, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge
